EXHIBIT A



**CORPORATION SERVICE COMPANY®**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Meg Johnson-Law Dept- Ab-2<br>Honeywell International Inc.<br>101 Columbia Rd.<br>Morristown, NJ 07962 |

| | |
|---|---|
| **Entity:** | Honeywell International Inc.<br>Entity ID Number  2034040 |
| **Entity Served:** | Honeywell International, Inc. dba Honeywell Security Group |
| **Title of Action:** | Mark Fitzhenry vs. ISI Alarms NC, Inc., dba Security Promotions |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Other |
| **Court/Agency:** | Charleston County Magistrate's Court, South Carolina |
| **Case/Reference No:** | 2012CV101060799 |
| **Jurisdiction Served:** | South Carolina |
| **Date Served on CSC:** | 11/13/2012 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| Sender Information: | Mark Fitzhenry<br>843-209-0278 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

**STATE OF SOUTH CAROLINA**            )

**COUNTY OF CHARLESTON**               )

)

)

)

)

**2012CV1010600799**
CIVIL CASE NUMBER

**IN THE MAGISTRATE'S COURT**

**SUMMONS**

Mark  Fitzhenry
10 Brigadier Drive
Charleston, SC 29407
(843) 209-0278

**PLAINTIFF(S)**

**Vs**

Honeywell International Inc.
DBAHoneywell security event Group
JOHN DOE

| ISI Alarms NC, Inc, dba | W Jayson Waller, Indiv. | Monitronics International, Inc. | Kevin Klink, Indiv |
|---|---|---|---|
| Security Promotions | 919 Main Street | R/A- CT Corporation System | 919 Main Street |
| R/A- CT Corporation System | Mooresville, NC 28117 | 2 Office Park Court, Ste 103 | Mooresville, NC 28117 |
| 2 Office Park Court, Ste. 103 | | Columbia, SC 29223 | |
| Columbia, SC 29223 | | | |

**DEFENDANT(S)**

### TO THE DEFENDANT(S) NAMED ABOVE:

**YOU ARE SUMMONED** and required to Answer the allegations and present any appropriate

Counterclaims/Crossclaims to the attached Complaint/Counterclaim within THIRTY days from the first

day after receipt of this Summons. Your Answer must be received by the:

**Charleston County**
**Small Claims - City**
**995 Morrison Drive  P. O. Box 941**
**Charleston, SC 29403**
**Phone: (843) 724-6720 Fax: (843) 724-6785**

If you fail to Answer within the prescribed time, a Judgment by Default will be rendered against you for

the amount or other remedy requested in the attached Complaint, plus interest and costs.  **If you desire a**

**jury trial, you must request one within five (5) business days before the date of trial.**  If no jury trial

is timely requested, the matter will be heard and decided by the Judge.

# READ ATTACHED INSTRUCTIONS CAREFULLY

June 1, 2012

MV 38

STATE OF SOUTH CAROLINA    )    CASE NO.: 2012·CV·10106·0799
                           )
COUNTY OF CHARLESTON       )

MARK FITZHENRY                                )
    Plaintiff,                            )
                                              )
      vs.                              )    **VERIFIED**
                                              )    **COMPLAINT**
ISI ALARMS NC, INC., dba Security Promotions, )
W. JAYSON WALLER, Individually,               )
KEVIN KLINK, Individually,                    )
MONITRONICS INTERNATIONAL, INC., and          )
JOHN DOE, whose true identity is unknown,     )
    Defendants.                           )
_____)

**ADDRESS FOR REGISTERED AGENT OF DEFENDANT ISI ALARMS NC, INC.,:**

W. Jayson Waller
C/O CT Corporation System
2 Office Park Court, Ste. 103
Columbia, SC 29223

**ADDRESS FOR W. JAYSON WALLER, Individually,:**

W. Jayson Waller
919 Main Street
Mooresville, NC 28117

**ADDRESS FOR KEVIN KLINK, Individually,:**

Kevin Klink
919 Main Street
Mooresville, NC 28117

**ADDRESS FOR AGENT FOR DEFENDANT MONITRONICS INTERNATIONAL, INC.,:**

Monitronics International, Inc.
C/O C T CORPORATION SYSTEM
2 Office Park Court, Ste. 103
Columbia, SC 29223

**ADDRESS FOR DEFENDANT JOHN DOE:**

FILED IN CHARLESTON COUNTY

MAY 2 4 2012

SMALL CLAIMS COURT

Unknown.

Plaintiff complaining of the Defendants alleges as follows:

## TYPE OF ACTION

1. This is an action to recover statutory damages imposed by 47 U.S.C. § 227, and trebled damages constituting forfeiture or other penalty.

## PARTIES

2. Plaintiff has residential phone service in Charleston County and the statutory violations and injury to Plaintiff occurred in Charleston County.

3. Defendant ISI ALARMS NC, INC., (herein after ISI), is a North Carolina for-profit corporation and registered to conduct business in South Carolina.

4. Defendant ISI is licensed with the State of South Carolina as a "BURGLAR ALARM COMPANY" under license number 13368.

5. Defendant W. JAYSON WALLER, Individually, (herein after WALLER), conducts or transacts business, or causes others to conduct or transact business anonymously on his behalf into South Carolina.

6. Defendant WALLER, conducts or transacts business, or at times causes others to conduct or transact business on his behalf and into South Carolina under the non-existent names including "Security Promotions" and/or "ISI-Honeywell".

7. Defendant KEVIN KLINK, Individually, (herein after KLINK), conducts or transacts business, or causes others under his authority to conduct or transact business on his behalf and in South Carolina, under the names "Security Promotions" and/or "ISI-Honeywell".

8. Defendant MONITRONICS INTERNATIONAL, INC., (herein after MONITRONICS), is a Texas for-profit corporation and conducts business in South Carolina.

9. Defendant JOHN DOE, whose true identity is unknown, conducts and transacts telemarketing business in Charleston County on behalf of himself and Defendants ISI, WALLER, KLINK, and MONITRONICS.

## VENUE AND JURISDICTION

10. The Telephone Consumer Protection Act ("the TCPA or "the Act") consists of 47 U.S.C. § 227 as amended and the FCC's implementing rules (see generally 47 C.F.R. Part 64 Subpart 1200 and Part 318). The TCPA places conduct, record keeping, Caller ID, and disclosure requirements on entities engaged in telephone solicitations and facsimile

transmissions, and it provides a private right of action by a consumer in State court in response to violations of the TCPA's regulations.

11.   The Telephone Consumer Protection Act ("the TCPA or "the Act") consists of 47 U.S.C. § 227(d)(3) requires that all artificial or prerecorded telephone messages shall, at the beginning of the message, state clearly the identity of the business, individual, or other entity initiating the call, and shall, during or after the message, state clearly the telephone number or address of such business, other entity, or individual.

12.   The Truth in Caller ID Act, 47 U.S.C. § 227(e)(1), prohibits any person within the United States, in connection with any real time voice communications service, regardless of the technology or network utilized, to cause any Caller ID service to transmit misleading or inaccurate caller ID information, with the intent to defraud or deceive.

13.   The current Amended Telemarketing Sales Rule, (the "TSR") consists of regulations of the Federal Trade Commission ("FTC") at 16 C.F.R. Part 310 et. seq. The "TSR" places conduct, record keeping, and disclosure requirements on entities engaged in telephone solicitations.

14.   The "TSR", at 16 C.F.R. § 310.4(b), Abusive telemarketing acts and practices, forbids those engaged in telephone solicitations from failing to provide the recipient of a telemarketing call with the true identity of the seller of the goods or services being marketed, that the purpose of a telemarketing call was to sell goods or services and the nature of the good or services being telemarketed by the Defendants.

15.   The "TSR", at 16 C.F.R. § 310.5, Recordkeeping requirements, requires that any seller or telemarketer shall keep, for a period of 24 months from the date the record is produced, records relating to its telemarketing activities including all substantially different telemarketing scripts, the name, any fictitious name used, the last known home address and telephone number, and the job title(s) for all current and former employees directly involved in telephone sales or solicitations; provided however, that if the seller or telemarketer permits fictitious names to be used by employees, each fictitious name must be traceable to only one specific employee.

16.   The "TSR" deems it a violation of its Rules for any person to provide substantial assistance or support to any telemarketer when that person knows or consciously avoids knowing that the telemarketer is engaged in any practice that violates the "TSR" at 16 C.F.R. § 310.4. 16 C.F.R. § 310.3(b).

17.   47 C.F.R. § 64.1200(f)(7), defines the term "seller" as the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.

18.   47 C.F.R. § 64.1200(f)(9), defines the term "telemarketer" as the person or entity that initiates a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.

19. 47 C.F.R. § 64.1200(f)(10), defines the term "telemarketing" as the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.

20. 47 C.F.R. § 64.1200(f)(12), defines the term "telephone solicitation" means the initiation of a telephone call or message for the purpose of encouraging the purchase of property, goods, or services, which is transmitted to any person without that person's prior express invitation or permission.

21. 47 C.F.R. § 64.1200(f)(13), defines the term "unsolicited advertisement" as any material advertising the commercial availability or quality of any property, goods, or services, which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise.

22. This cause of action arises out of conduct of Defendants initiating, and/or causing to be initiated on their behalf and for their benefit, a call to Plaintiff's residential telephone line containing or constituting an "unsolicited advertisement".

23. Venue and jurisdiction are proper in this Court pursuant to 47 USC § 227 and 47 C.F.R. § 64.1200, the Constitution and Laws of the state of South Carolina and United States as they may apply.

### TCPA "on behalf of" liability

24. Under the TCPA a person or entity can be liable for calls made on its behalf even if that person or entity did not directly place those calls.

25. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

26. In 2005, the FCC reiterated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call." See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request of State Farm Mutual Automobile Insurance Company for Clarification and Declaratory Ruling, Declaratory Ruling, 20 FCC Rcd. 13664, 13667, ¶ 7 (2005).

### ACTS OF AGENTS OR OTHERS ACTING ON BEHALF OF OR FOR THE BENEFIT OF THE DEFENDANTS

27. Whenever it is alleged in this complaint that Defendants did any act, it is meant that the Defendants performed, caused to be performed, and/or participated in the act, or that Defendants' officers, employees, contractors, assigns, successors, predecessors, affiliates,

or other agents, or other entities, performed or participated in the act on behalf of, for the benefit of, and/or under the authority of the Defendants.

## DEFENDANTS' USE OF PRERECORDED TELEPHONE MESSAGES

28. Defendant MONITRONICS INTERNATIONAL, INC., (hereinafter, MONITRONICS), sells residential alarm system monitoring services.

29. Defendant ISI is an authorized dealer of Defendant MONITRONICS.

30. Defendant MONITRONICS has entered into oral or written contracts to market its goods and services with Defendant ISI.

31. Defendant ISI has entered into oral or written contracts with Defendant JOHN DOE to market the home security monitoring services ISI then sells to MONITRONICS.

32. Defendants ISI, WALLER, and MONITRONICS each fulfill the definition of a "seller" as defined in 47 C.F.R. § 64.1200(f)(7).

33. Defendants MONITRONICS and/or ISI and/or WALLER, initiate themselves, or cause others to initiate on their behalf and for their benefit, unsolicited prerecorded calls to residential telephone subscribers in violation of rules governing telemarketing within the FTC's "TSR" and the FCC's TCPA.

34. Defendants ISI, WALLER, KLINK, and JOHN DOE are "telemarketer(s)" as defined in 47 C.F.R. § 64.1200(f)(9).

35. Defendants use, directly and/or by their agents or other entities, one or more devices that call residential telephone subscribers and deliver messages containing an "unsolicited advertisement" using a prerecorded or artificial voice.

36. Upon information and belief, Defendant MONITRONICS participates in a joint venture with its authorized dealers, including ISI, to secure alarm monitoring contracts with residential security alarm consumers on behalf of MONITRONICS.

37. Defendant MONITRONICS authorizes its dealers, including ISI and its personnel, WALLER and KLINK, to market its monitoring services through a variety of methods.

38. Defendant MONITRONICS engages in and provides substantial assistance in a joint venture with Defendants ISI, WALLER, KLINK, and JOHN DOE in marketing MONITRONICS' services through telephone solicitation calls.

39. Among other things Defendants engage, directly and/or indirectly through others acting on their behalf and for their benefit, in the practice customarily called "telemarketing" whereby residential telephone subscribers are called on the telephone for purposes of solicitation.

40. One procedure engage in by the Defendants, is to initiate, or have a third party initiate, an outbound telephone call and when the recipient of the call responds in a defined way, as in pressing the one key, that call will be transferred to a call center as an inbound call.

41. Defendants ISI, WALLER, and KLINK, as a result of telephone solicitation calls, secure signed home alarm monitoring contracts with the residential customers and then sell those contracts to Defendant MONITRONICS.

## DEFENDANTS' INBOUND CALL CENTER

42. Defendant WALLER is the CEO of Defendants ISI and/or ISI NC.

43. Defendant KLINK is Defendant ISI's Vice President of Marketing.

44. Defendants ISI, WALLER, and KLINK operate a call center in Concord, NC.

45. During or about 2011, Security Systems News, a trade publication for "Security System Integrators and Installers", published an article dated October 13, 2011 related to the marketing efforts of Defendants ISI, WALLER, and KLINK. That article is linked to Defendant ISI's website, www.isialarms.net.

46. The Security Systems News article posted on ISI's website (hereinafter, the "article"), about Defendants ISI, WALLER, and KLINK, contains several revealing statements about Defendant ISI's telemarketing activities.

47. The "article" quotes Defendant WALLER, as saying of Defendant ISI, "Last month alone we sold over 600 [accounts] to Monitronics. We anticipate being 1,000-a-month dealer in January or February and then hopefully 1,500 to 2,000 by summer..."

48. The "article" states, "Waller said reasons for the move include high-bandwidth fiber infrastructure in Mooresville, needed for the company's call center, and its cramped current office."

49. According to additional statements in the "article," Defendant KLINK said, "What we do is generate inbound calls for our call center here. We do it via outbound telemarketing."..."...we have what we call 'closers' to work to sell the customers over the phone and our technicians are hybrid, they're salesmen/installers, so they can then take the customer and then finish up the deal and install".

50. Defendant MONITRONICS provides some of its authorized dealers with a written contract called an "Alarm Monitoring Agreement" (hereinafter, Alarm Monitoring Agreement).

51. Defendant MONITRONICS has, directly or indirectly, offered to provide, or has provided, financial payments to its authorized dealers, including Defendant ISI, for obtaining signed residential Alarm Monitoring Agreements on its behalf.

52. Upon information and belief, Defendant MONITRONICS, or others acting on behalf of MONITRONICS, are the author(s) of the Alarm Monitoring Agreement marketed to alarm monitoring customers by its authorized dealers, including ISI.

53. Upon information and belief, Defendant MONITRONICS formulated the terms set forth in the Alarm Monitoring Agreement.

54. Through contracts with its authorized dealers, Defendant MONITRONICS authorizes its dealers to market, promote, solicit, consumers to sign up for Defendant MONITRONICS' residential alarm monitoring services by obtaining signed Alarm Monitoring Agreements on behalf of Defendant MONITRONICS.

55. Upon information and belief, Defendant MONITRONICS maintains the sole authority to set the monthly monitoring fee in the Alarm Monitoring Agreement; sets the term or length of the contract; requires or encourages its authorized dealers to conduct credit checks on prospective customers prior to entering into the Alarm Monitoring Agreement; maintains the sole discretion to set the minimum credit standards by which prospective customers are approved; maintains the sole discretion over the place established to arbitrate and litigate disputes concerning its Alarm Monitoring Agreement.

56. Upon information and belief, Defendant MONITRONICS has provided ISI with the authority to use the Alarm Monitoring Agreement in a joint effort to secure contracts with residential security alarm consumers on behalf of MONITRONICS.

57. In some cases the Defendant MONITRONICS allows its authorized dealers, including ISI, to use the MONITRONICS trade mark or trade name or logo on their website, printed material, or sales pitches in the marketing of MONITRONICS' alarm monitoring services.

58. In some cases Defendant MONITRONICS allows its authorized dealers, including ISI, to print at the top of the Alarm Monitoring Agreement, the name, address, phone number, website, and state burglar alarm license numbers of the authorized dealer.

59. Upon information and belief, Defendant MONITRONICS authorizes or requires its dealers and their representatives, including those of Defendant ISI, to do 'soft credit checks' on prospective customers on the residential telephone consumers contacted through their telemarketing efforts prior to entering into an Alarm Monitoring Agreement with that prospective customer.

60. Upon information and belief, Defendant MONITRONICS authorizes or requires its dealers and their representatives, including those of Defendant ISI, to determine if the prospective customers it contacts are the legal owners of the homes at the addresses to be covered by the Alarm Monitoring Agreement prior to entering into an Alarm Monitoring Agreement with that prospective customer.

61. Upon information and belief, Defendant MONITRONICS authorizes or requires its dealers and representatives, including those of Defendant ISI, to fill out the Alarm Monitoring Agreement with the homeowner's name, address, Social Security number, phone numbers, Monthly Monitoring Rate, Other charges, Total Monthly Fee, One Time Monitoring Activation Fee, and homeowner's Checking Account or Credit Card information.

62. Upon information and belief, the Alarm Monitoring Agreement MONITRONICS gives to its authorized dealers, including ISI, provides in Section 16. ASSIGNMENT, that the authorized dealer that obtains a customer's signature on an Alarm Monitoring Agreement, "may assign this Agreement to Monitronics Funding, LP or Monitronics International, Inc…or to another company".

63. Upon information and belief, Defendant MONITRONICS pays ISI each time one of its authorized dealers, including ISI, secures a qualified residential customer's signature on the Alarm Monitoring Agreement when that Alarm Monitoring Agreement is transferred and/or assigned and/or sold to MONITRONICS or to a MONITRONICS-related entity.

64. Upon information and belief, Defendant MONITRONICS maintains sole discretion in its Alarm Monitoring Agreement as to the place of arbitration and jurisdiction of any litigation related to the Alarm Monitoring Agreement and has fixed the place of arbitration at Dallas, Texas, the domicile of Defendant MONITRONICS, despite the fact that in some cases, the authorized dealer was not domiciled in Dallas, Texas.

65. Upon information and belief, the Alarm Monitoring Agreement used by MONITRONICS' authorized dealers, including Defendant ISI, stipulates in Section 13. BINDING ARBITRATION, of the Alarm Monitoring Agreement that any "BINDING ARBITRATION" will be held in "Dallas, Texas", the home jurisdiction of Defendant, MONITRONICS and not ISI, a Nevada corporation operating out of North Carolina.

66. Defendant MONITRONICS, directly or indirectly, has provided, financial payments to its authorized dealers, including Defendant ISI, for obtaining and/or selling signed Alarm Monitoring Agreements for MONITRONICS even after it became aware that ISI was procuring such contracts through a pattern of unlawful practices that violate the TSR and TCPA.

## DEFENDANTS' PATTERN OF UNLAWFUL TELEMARKETING PRACTICES

67. Telemarketing calls made by and/or on behalf of the Defendants to the Plaintiff's residential telephone line transmitted inaccurate, "spoofed" or falsified caller ID.

68. Defendants, or entities acting on behalf of and for the benefit of the Defendants, caused the caller ID service of calls to transmit false, misleading, or inaccurate caller ID information of the call complained of herein and did not transmit the true originating telephone number or the true name of the person or entity initiating the call or the true names of Defendants MONITRONICS or ISI as the entities on whose behalf the call was made.

69. The FIRST CALL made by and/or on behalf of the Defendants and for the Defendants' benefit to the Plaintiff's residential telephone line transmitted caller ID information indicating the call originated from "1-360-474-3202" and indicated that the name of the caller was "PHONE".

70. The SECOND CALL made by and/or on behalf of the Defendants and for the Defendants' benefit to the Plaintiff's residential telephone line transmitted caller ID information indicating the call originated from "1-253-246-8549" and indicated that the name of the caller was "PHONE".

71. The Defendants, or others acting on the Defendants' behalf and for their benefit, transmitted inaccurate, in the FIRST CALL and SECOND CALL, "spoofed" or falsified caller ID, an act which constitutes TWO violations of specific requirements in The Truth in Caller ID Act, 47 U.S.C. § 227(e)(1) prohibiting knowingly causing, directly or indirectly, any caller identification service to transmit or display misleading or inaccurate caller identification information.

72. Defendants, or entities acting on behalf of and for the benefit of the Defendants, at the beginning of the message, failed to state clearly the identity of the business, individual, or other entity initiating the call as required by law, violating the TCPA at 47 C.F.R. 64.1200 (b)(1).

73. Defendants, and/or entities acting on behalf of and for the benefit of the Defendants, failed to reveal the true identities of Defendants MONITRONICS or ISI or WALLER, the entities that ultimately caused the initiation of the calls, and failed to, during or after the message, state clearly the telephone number or address of such business, other entity, or individual initiating the call as required by law and violating the TCPA at 47 C.F.R. 64.1200 (b)(2).

74. Defendants, or entities acting on behalf of the Defendants, intentionally, in even a further effort to conceal from the Plaintiff the source of the call and to unlawfully conceal their true identities, failed to have adequate procedures in place for consumers to make a valid Do Not Call request as required by law.

75. Defendants ISI, WALLER, or KLINK employed, or contracted with at least one person during the month of November, 2011, who went by the name of "Everett".

76. The November 10, 2011, outbound call to the Plaintiff and complained of herein as the FIRST CALL was transferred to a live operator as an inbound call after the one key was pressed as instructed in the message.

77. The live operator who answered the inbound call identified himself as "Everett" (hereinafter Everett).

78. Everett identified himself as being with "Security Promotions" based in "Charlotte, North Carolina", when in fact, he was employed by, or contracted with, or acted on behalf of Defendants ISI, WALLER, or KLINK.

79. Defendants ISI, WALLER, or KLINK, received at least one inbound call on November 10, 2011, that was answered by an individual using the real or fictitious name of "Everett".

80. Upon information and belief, Everett was employed by, or contracted with Defendants ISI, WALLER, or KLINK as a "closer" or in some other related capacity to work in Defendant ISI's call center.

81. Upon information and belief, Everett was trained or instructed by Defendants ISI, WALLER, and/or KLINK, to terminate inbound calls from people who questioned him regarding the true identity of those on whose behalf he worked.

82. Jared Keessee was an employee of ISI during the period that the Plaintiff received the two calls complained of herein.

83. Upon information and belief, Jared Keesee worked with and/or knew "Everett", the live operator who answered the inbound call (FIRST CALL) that resulted from the prerecorded call initiated to the Plaintiff's residential telephone line on November 10, 2011.

84. Defendant ISI received one or more inbound call(s) as a result of outbound telemarketing efforts using prerecorded message during the period from November 10, 2011 to April 30, 2012, that was answered by an individual using the name "Everett".

85. Everett at times, has provided a call back number of "800-650-2712" and stated that his extension was "7026" during the latter part of 2011.

86. Defendant ISI's website lists "1.800.650.2712" as its contact telephone number at its website, www.isialarms.net.

87. Defendant ISI employed, or contracted with at least one person during the month of November, 2011, who went by the name of "Adam".

88. Defendant ISI received at least one inbound call on November 26, 2011, that was answered by an individual using the name of "Adam".

89. The November 26, 2011, outbound call complained of herein as the SECOND CALL was transferred to a live operator as an inbound call after the called party pressed the one key as instructed in the message.

90. The live operator who answered the inbound call identified himself as "Adam" (hereinafter Adam).

91. Adam identified himself as being with "Security Promotions" when in fact, he was employed by, or contracted with, Defendant ISI.

92. Upon information and belief, Adam was employed by, or contracted with Defendant ISI as a "closer" or in some other related capacity to work in Defendant ISI's inbound call center.

93. Upon information and belief, Adam was trained or instructed by Defendant ISI, to identify himself as representing "Security Promotions".

94. Upon information and belief, Adam was trained or instructed by Defendant ISI to immediately terminate inbound calls from people who questioned him regarding the true identity of those on whose behalf he worked.

95. Defendant ISI received one or more inbound calls as a result of their outbound telemarketing efforts using prerecorded message during the period from November 10, 2011 to April 30, 2012, that was answered by an individual using the real or fictitious name of "Adam".

96. Adam's call back number was "800-650-2712" during the latter part of 2011.

97. Upon information and belief, Jared Keesee worked with "Adam", the live operator who answered the inbound call (SECOND CALL) that resulted from the prerecorded call initiated to the Plaintiff's residential telephone line on November 26, 2011.

98. Since about 2011, Defendant MONITRONICS became aware that some of its authorized dealers have engaged in an ongoing pattern of unlawful telemarketing in violation of the TSR and TCPA and this unlawful pattern of telemarketing was being done on behalf of and for the benefit of Defendant MONITRONICS.

99. Upon information and belief, Defendant MONITRONICS has not terminated any of its authorized dealers for engaging in, or causing others to engage in, telemarketing Defendant MONITRONICS' alarm monitoring services by employing the initiation of unsolicited prerecorded calls to residential telephone subscribers in apparent violation of the TSR and TCPA.

100. Upon information and belief, through contracts with its authorized dealers and/or through other means, Defendant MONITRONICS has the right to terminate its authorized dealers.

101. Defendant MONITRONICS failed to implement an effective compliance program to monitor and enforce its authorized dealers' compliance with the TSR and TCPA, even after it had received complaints regarding prerecorded calls to residential telephone subscribers and been the subject of a class action lawsuit for telemarketing violations by an authorized dealer.

102. Upon information and belief, Defendant ISI, through its unlawful telemarketing efforts, has secured signed Alarm Monitoring Agreements.

103. Other authorized dealers of Defendant MONITRONICS, are known by Plaintiff to engage in a similar pattern of telemarketing to that practiced by ISI and complained of herein. This

pattern of telemarketing also includes the initiation of unsolicited prerecorded home alarm advertisements placed to residential telephone subscribers, transmitting falsified caller ID numbers and names, and false identification of the company reached by those who press the one key, "fly-by-night" telemarketers, etc.

104. Defendants use and/or cause to be used, directly and/or by their agents or other entities acting on Defendants' behalf, one or more devices that initiate call(s) to residential telephone subscribers and deliver messages using a prerecorded or artificial voice.

105. Defendants directly and/or by their agents, or other entities acting on Defendants' behalf, did initiate, or did cause to be initiated on their behalf and for their benefit, the telephone call alleged herein with a device that delivered messages using a prerecorded or artificial voice.

106. Defendant MONITRONICS has provided substantial assistance or support to a national network of authorized dealers, including Defendants ISI, WALLER, and KLINK in their unlawful telemarketing of MONITRONICS' goods or services.

107. Defendants directly and/or by their agents, or other entities acting on their behalf and for their benefit, are aware of this device's designed operation and/or have knowledge that calls were being made using an artificial or prerecorded voice to deliver messages.

108. Defendants MONITRONICS, ISI, WALLER, KLINK, and/or JOHN DOE have engaged in a joint telemarketing venture, plan, program, or campaign to market the home security alarm monitoring services of Defendant MONITRONICS.

109. The marketing venture of the Defendants relies on a carefully engineered pattern of concealment, deception, abusive telemarketing practices as defined by the FTC, unlawful behavior, unfair trade practices, and, ultimately, Defendant MONITRONICS' ability to deny that those engaged in marketing its services were not its agents, and/or for MONITRONICS to pretend it was unaware of, or unable to control or stop, the systemic and unlawful behavior conducted on their behalf and for the collective benefit of all of the Defendants.

110. Defendants' business practices as detailed herein violate the "TSR", at 16 C.F.R. Part 310.4(b), and constitute abusive telemarketing acts and practices, in that the Defendants and/or those acting on their behalf, engaged in telephone solicitations while also failing to provide the recipient of a telemarketing call with the true identity of the seller of the goods or services being marketed, and that the purpose of a telemarketing call was to sell goods or services of Defendant MONITRONICS.

111. Since the latter half of 2011, Defendant MONITRONICS has provided substantial assistance or support to its network of authorized dealers, including Defendant ISI, even after having received from consumers complaints regarding the initiation of unsolicited prerecorded calls to residential telephone subscribers.

112. Defendant MONITRONICS failed to monitor and enforce compliance with the TCPA by its authorized dealers, including Defendant ISI, even though it was on notice of alleged violations of the TCPA.

113. Defendant MONITRONICS, by failing to monitor and ensure compliance with the TSR and TCPA, has ratified the unlawful conduct of some of its authorized dealers, including ISI, that in the regular course of conducting business on behalf of and for the benefit of MONITRONICS, violate the TSR and TCPA in marketing Defendant MONITRONICS' alarm monitoring services.

114. Defendants ISI, WALLER, KLINK, and MONITRONICS had notice of and knew of the illegal telemarketing campaign being conducted on their behalf and for their benefit prior to the initiation of the FIRST CALL and SECOND CALL.

115. If Defendants ISI, WALLER, and MONITRONICS were not already aware of the illegal telemarketing done on their behalf, they became aware through series of civil complaints filed against the Defendants.

116. Defendants ISI, WALLER, KLINK, and MONITRONICS, have not repudiated the telemarketing that violates the TCPA, the income they have gained through the unlawful telemarketing practices being conducted on their behalf and for their benefit.

117. Defendants directly and/or by their agents, or other entities acting on their behalf and for their benefit, did initiate the telephone calls alleged herein with a device that delivered messages using a prerecorded or artificial voice.

118. Defendants directly and/or by their agents, or other entities, are aware of this device's designed operation and/or have knowledge that calls were being made using an artificial or prerecorded voice to deliver messages.

119. Defendants directly and/or by their agents or other entities, can exercise control over the content of the messages delivered by the artificial or prerecorded voice.

120. Defendants directly and/or by their agents or other entities, can exercise control over the people who make the calls that deliver messages by artificial or prerecorded voice.

121. Defendants' policies and procedures for implementation of the TCPA, the TSR, and other applicable telemarketing laws and regulations did function as designed with relation to the call(s) alleged herein to have been made to Plaintiff's home.

122. Defendants' policies and procedures for implementation of the TCPA, the TSR, and other applicable telemarketing laws and regulations did not function as required by law with relation to the call(s) made to Plaintiff's home as alleged herein.

## TELEPHONE CALLS MADE TO PLAINTIFF
### FIRST CALL

123. At all times relevant, plaintiff subscribed to residential phone service at (843) 763-1013.

124. The call alleged herein was purposefully directed to the area code 843 and the prefix 763.

125. On or about November 10, 2011, at about 8:22 PM, a telephone call, the (FIRST CALL), was initiated to the Plaintiff's residential telephone line by or on behalf of the Defendants.

126. The purpose of the FIRST CALL was, among other things, to deliver a telephone message to the called party on behalf of the Defendants.

127. The FIRST CALL was not solicited by the Plaintiff.

128. In the FIRST CALL described herein, Defendants willfully and/or knowingly intended to deliver a recorded message and solicitation to the called party.

129. Plaintiff has preserved evidence that the FIRST CALL was initiated in order to deliver a prerecorded call to the Plaintiff's residential telephone line.

130. A true and correct transcript of the FIRST CALL is attached hereto, and incorporated herein by reference, as Exhibit "A".

## SECOND CALL

131. On or about November 26, 2011, at about 6:22 PM, a telephone call, the (SECOND CALL), was initiated to the Plaintiff's residential telephone line by or on behalf of the Defendants.

132. The purpose of the SECOND CALL was, among other things, to deliver a telephone message to the called party on behalf of the Defendants.

133. The SECOND CALL was not solicited by the Plaintiff.

134. In the SECOND CALL described herein, Defendants willfully and/or knowingly intended to deliver a recorded message and solicitation to the called party.

135. Plaintiff has preserved evidence that the SECOND CALL was initiated in order to deliver a prerecorded call to the Plaintiff's residential telephone line.

136. A true and correct transcript of the SECOND CALL is attached hereto, and incorporated herein by reference, as Exhibit "B".

## FIRST CAUSE OF ACTION - 47 U.S.C. 227 (b)(1)(B)

137. Paragraphs 1 through 136 are restated as if set forth herein.

14

138. Defendants did initiate TWO telephone calls, the FIRST CALL and the SECOND CALL, to Plaintiff's telephone using an automated dialing device designed to deliver artificial or prerecorded voice to deliver a message without the prior express consent of the called party.

### Violation of identification requirements – 47 C.F.R. 64.1200 (b)(1)

139. Paragraphs 1 through 138 are restated as if set forth herein.

140. The recorded message in the FIRST CALL and SECOND CALL did not fulfill the requirements of 47 C.F.R. 64.1200 (b)(1) in that during or after the message, state clearly the identity of such individual, business, or other entity making the call.

### Violation of identification requirements – 47 C.F.R. 64.1200 (b)(2)

141. Paragraphs 1 through 140 are restated as if set forth herein.

142. The recorded message in the FIRST CALL and SECOND CALL did not fulfill the requirements of 47 C.F.R. 64.1200 (b)(2) in that during or after the message, state clearly the telephone number of such individual, business, or other entity making the call.

### Willful or Knowing Violations

143. Defendants' actions, as described in paragraphs 138, 140, and 142 manifest NINE knowing and/or willful actions in violation of 47 U.S.C. 227 within the meaning of the 1934 Communications Act and the Federal Communications Commission.

### PRAYER FOR RELIEF

144. WHEREFORE, Plaintiff prays for the following relief, temporarily and permanently:

145. For the statutory damages of $500 per violation, to be awarded to the Plaintiff in accordance with the TCPA, for TWO of the Defendants' violations of that TCPA and;

146. For trebled damages to be awarded to the Plaintiff in accordance with the TCPA, for the Defendants' TWO willful and/or knowing violations of that TCPA listed in paragraph 138 above; and

147. For unspecified punitive damages in an amount to be determined by this Court.

148. For such other and further relief as the Court may deem just and proper.

149. Plaintiff waives the excess of any award above the jurisdiction of the Court in effect at the time at the time judgment is rendered.

Respectfully submitted,
the 24th day of May, 2012.

Mark Fitzhenry
Plaintiff, *Pro Se*
10 Brigadier Drive
Charleston, SC 29407

## Exhibit A

Do not hang up. This is not a sales call. There has been a burglary in your neighborhood. And you are eligible to receive a free home security system. Free. You will be protected against burglary, fire, and medical emergencies. If you have an interest in having the system installed at absolutely no cost to you, please press one. If you would like to be removed from the list, please press two.

## Exhibit B

Do not hang up. This is not a sales call. There has been a burglary in your neighborhood. And you are eligible to receive a free home security system. Free. You will be protected against burglary, fire, and medical emergencies. If you have an interest in having the system installed at absolutely no cost to you, please press one. If you would like to be removed from the list, please press two.

## VERIFICATION

The undersigned states and swears that all the forgoing allegations are true and correct to the best of his knowledge and belief.

Mark Fitzhenry

Subscribed and sworn to before me by Mark Fitzhenry on this the 24th day of May, 2012.

Notary Public for South Carolina
My commission expires on June 3, 2015.

FILED IN CHARLESTON COUNTY
MAY 2 4 2012
SMALL CLAIMS COURT

16

**STATE OF SOUTH CAROLINA**    )

                               )

**COUNTY OF CHARLESTON**    )

                               )

                               )

                               )

**2012CV1010600799**
CIVIL CASE NUMBER

**IN THE MAGISTRATE'S COURT**

**ANSWER**

Mark Fitzhenry
10 Brigadier Drive
Charleston, SC 29407
(843) 209-0278
**PLAINTIFF(S)**

JOHN DOE

Vs

| ISI Alarms NC, Inc, dba Security Promotions<br>R/A -CT Corporation System<br>2 Office Park Court, Ste. 103<br>Columbia, SC 29223 | W Jayson Waller, Indiv.<br>919 Main Street<br>Mooresville, NC 28117 | Monitronics International, Inc.<br>R/A –CT Corporation System<br>2 Office Park Court, Ste103<br>Columbia, SC 29223 | Kevin Klink, Indiv<br>919 Main Street<br>Mooresville, NC 28117 |

**DEFENDANT(S)**

On _____ I was served with a Complaint requiring me to answer within thirty days from the date of service. My Answer, which is hereby filed with the **Charleston County Summary Court,** is as follows:

CHECK ONE:

    A. ☐ I contest the jurisdiction of the court based on the following: (use additional pages if necessary)

_____

_____

    B. ☐ I admit everything in the complaint and do not want a trial.
    C. ☐ I admit that I am responsible, but not for the total amount claimed by the Plaintiff(s) because: (use additional pages if necessary) _____

_____

    D. ☐ I deny that I am responsible at all because: (use additional pages if necessary)

_____

_____

### YOU MUST FILE THIS DOCUMENT WITH THE COURT WITHIN THIRTY DAYS

THE DEFENDANT/PLAINTIFF STATES THAT THE INFORMATION CONTAINED IN THIS ANSWER IS TRUE AND CORRECT TO THE BEST OF HIS/HER KNOWLEDGE.

DATED: _____

_____
SIGNATURE OF DEFENDANT(S) (OR ATTORNEY)

**\*\*IF MORE THAN ONE DEFENDANT, ALL MUST FILE ANSWER\*\***

**PLEASE RETURN TO:**

**Small Claims - City**
**˜95 Morrison Drive, P. O. Box 941**
**Charleston, SC 29403**
**Phone: (843) 724-6720**

MV 2

# CHARLESTON COUNTY SMALL CLAIMS COURT
## INSTRUCTION SHEET

**ADDRESS:**    POST OFFICE BOX 941, 29402    995 MORRISON DRIVE, CHARLESTON, SC 29403

**PHONE:**    SMALL CLAIMS COURT DOWNTOWN    CALL (843) 724-6720

**HOURS:**    8:30 AM -    PM Monday through *Friday*

**FILING:**    The filing and service of process fee is $80.00. There is an additional $10.00 charge for each additional defendant with a different address. The complaint and any attachments must be filed in DUPLICATE.    Please provide the court with a clear and accurate legal name and street address for the defendant, so that the summons and complaint can be served without delay. Route and box numbers are not acceptable. If filing against a business, determine whether or not the business is incorporated or privately owned. If privately owned, list owner's full legal name. If incorporated, list agent's name and address for service of process. If filing to collect an account or note, include duplicate copies of the statement of account, invoices, or note to verify the amount due and have your signature notarized. The jurisdictional limit in this court is $7,500.00.

**SUMMONS:**    The Small Claims Court issues a summons when the complaint is filed and the summons requires the defendant to answer the complaint within thirty (30) days after the date of service. The defendant must answer in writing and a clerk is available at the Small Claims Office to assist a party if needed.

If the defendant has a claim against the plaintiff arising from the same facts, the defendant may file a counterclaim in writing with the court at the same time the answer is filed.

**DEFAULT:**    If the defendant does not answer within thirty (30) days after service of the summons and complaint, a judgment by default may be entered against the defendant.

**HEARING:**    The Court will schedule a hearing at the time the defendant files an answer. The parties must appear with any witnesses and evidence that are necessary to prove their cases. A WRITTEN, NOTARIZED, OUT OF COURT STATEMENT FROM A WITNESS CANNOT BE USED AS EVIDENCE. A WITNESS MUST APPEAR IN PERSON IN COURT TO TESTIFY. There is a charge of $8.00 per subpoena if issued by the court.

**JURY TRIAL:**    Either party has the right to request a jury trial and it must be submitted in writing at least five (5) working days prior to the date of the hearing.

**JUDGMENTS:**    A Transcript of Judgment will be issued with specific instructions about the enforcement of the Judgment. It may be recorded immediately at the Clerk of Court's Office. The Execution Against Property Order may be filed with the Charleston County Sheriffs Office thirty (30) days after notice of judgment. The recorded judgment will remain valid and enforceable for a period of ten (10) years and accrues interest at the rate of 12% from the date of judgment. When the judgment is satisfied, the plaintiff must notify the Clerk of Court's Office so that the judgment will be recorded as satisfied.

**POST TRIAL:**    A Motion for a New Trial must be received by this court in writing within five (5) days after notice of the judgment.

**APPEALS:**    An appeal must be filed in writing within thirty (30) days from the notification of the judgment date. There is a $150.00 filing fee and it must be filed with the Court of Common Pleas. The notice of appeal must be personally served on this court and on the opposing party within the same thirty (30) days.

R-02/04



POSTAGE $.80⁰
09 2012

CERTIFIED MAIL™

7010 2780 0001 9579 9498

Honeywell International, Inc
DBA Honeywell Security Group
Corporation Service Co.
1703 Laurel St.
Columbia, SC 29201

RETURN RECEIPT
REQUESTED